UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                             CRIM. NO. CR. No. 05-81072
vs.                                        HON. LAWRENCE ZATKOFF

YUSEF DANOU,

        Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on May 25, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

This matter is before the Court on Defendant's Motion to Withdraw Guilty Plea (Docket #11), which Motion included a request in the alternative for a *Santobello* hearing. The Government filed a response to Defendant's Motion. On Monday, May 15, 2006, the Court held a *Santobello* hearing, which hearing was attended by Defendant, as well as counsel for the Government and counsel for Defendant.

At the hearing, Defendant called the following witnesses: Stanley Janice, formerly the Assistant United States Attorney on this case, David Steingold, formerly the defense attorney on this case, and Thomas Elkins, an attorney retained by Defendant for civil matters. The Government called the FBI agent in charge of this case, James Hoppe. A fifth witness, attorney Daniel Zolkower, was subpoenaed but did not appear. The parties entered into a stipulation as to what the substance of Mr. Zolkower's testimony would have been. At the conclusion of the hearing, the Court

adjourned the matter to review the record and issue a written opinion.

## I. BACKGROUND

**A.     Defendant's Actions**

The alleged actions of Defendant to defraud an elderly man of real property valued at several hundred thousand dollars constituted the basis for the current criminal charges against Defendant. Murray West, who was more than 80 years old at the time of the commission of the offense, owned a parcel of lakefront property in Waterford, Michigan. Prior to May 12, 2003, Defendant entered into a land contract with Mr. West such that Defendant would receive the title to the property upon the payment of $300,000. The Government alleges that Defendant subsequently forged Mr. West's signature to a deed which transferred ownership of the property from Mr. West to Defendant. Defendant then filed the deed with the Oakland County Register of Deeds and subjected the property to a number of liens.

On or about November 3, 2005, Defendant signed a Waiver of Indictment and agreed to be charged in an Information with the offense of Identity Theft, in violation of 18 U.S.C. §1028(a)(7). The Information was filed with the Court on November 29, 2005. Defendant was arraigned before a Magistrate Judge on January 31, 2006, at which time he also signed an Acknowledgment of Information, which set forth the statutory maximum penalty of 15 years for the charged offense.

On February 2, 2006, Yusef Danou entered a plea of guilty before this Court to the charge contained in the Information, pursuant to the terms of a Rule 11 Plea Agreement. On March 21, 2006, counsel for Defendant, David Steingold, filed a motion seeking to withdraw from his representation of Defendant. In his motion, Steingold stated that Defendant wished to withdraw his

plea because there had been an agreement with the Government that Defendant would not be prosecuted for the instant offense. Rather than file such a motion, Mr. Steingold advised the Court that "[t]here was never such an agreement and counsel refuses to make such a claim." Mr. Steingold was subsequently permitted to withdraw from the case upon the entry of a Stipulation for Substitution of Attorneys.

**B.      Defendant's Motion**

Defendant's newly retained attorney, Richard Lustig, filed the instant Motion to Withdraw Plea on April 14, 2006. In his Motion, Defendant claims: (1) there was an agreement that he not be prosecuted in the instant matter, and (2) at the time of entering his guilty plea, he believed that he would receive "little or no time" for the instant offense.

According to Defendant, once it was discovered that he had "allegedly forged Mr. West's signature, the U.S. Attorney and David Steingold, under information and belief, made an agreement that if the Defendant were to deed the property back to Mr. West, then all would be forgiven." Defendant claims he signed a deed giving the property back to Mr. West and gave it to Mr. West's civil attorney in 2004, but that such attorney apparently did not record the deed because he was fearful that the subsequent mortgage would adversely affect Mr. West.  Defendant claims he was not aware that the deed was not filed until after he entered his plea of guilty.  For that reason, Defendant claims his plea was involuntary and seeks to withdraw it.

In the alternative, Defendant asked the Court to conduct a *Santobello* hearing regarding the alleged promises. *See Santobello v. New York*, 404 U.S. 257 (1971).  On April 27, 2006, the date set for Defendant's sentencing, the Court granted Defendant's request for a *Santobello* hearing but did not otherwise rule on Defendant's Motion to Withdraw Plea.

3

## II. LEGAL STANDARD

F.R.Crim.P. 32(e) states in pertinent part, "[i]f a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." *See also United States v. Hyde*, 117 S.Ct. 1630 (1997). Defendant has the burden of establishing that there is a "fair and just reason" justifying the withdrawal of the plea. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *United States v. Isom*, 85 F.3d 831, 834 (1st Cir. 1996); *United States v. Wade*, 940 F.2d 1375, 1377 (10th Cir. 1991); and *United States v. Johnson*, 89 F.3d 778, 784 (11th Cir. 1996).

> [T]he aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.

*United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation omitted), *cert. denied*, 502 U.S. 1117 (1992).

The court may weigh seven factors in determining whether or not a defendant has shown a "fair and just reason" to set aside a guilty plea:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;
(2) the presence (absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
(3) whether defendant has asserted or maintained his innocence;
(4) the circumstances underlying the entry of the guilty plea;
(5) defendant's nature and background;
(6) the degree to which defendant has had prior experience with the criminal justice system; and
(7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1180-81 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995).

Where a defendant "wholly [fails] to show any 'fair and just reason' for withdrawing his plea," however, there is no need to address each of the seven factors. *United States v. Bazzi*, 94 F.3d 1025 (6th Cir. 1996). *See also*, *United States v. Spencer*, 836 F.2d 236 (6th Cir. 1987), and *United States v. Triplett*, 828 F.2d 1195 (6th Cir. 1987).

### III.  ANALYSIS

In his Motion to Withdraw Plea, Defendant asserts that his plea was involuntary because: (1) there was an agreement that he not be prosecuted in the instant matter, and (2) at the time of entering his guilty plea, he believed that he would receive "little or no time" for the instant offense. The Court addresses these contentions below.

**A.**     *Santobello* **Hearing Reveals No Agreement**

At the May 15, 2006, *Santobello* hearing, four witnesses testified.              The Court found the testimony of the witnesses to be credible and uniformly consistent. Each of the witnesses testified that when the relevant persons (Mr. Janice, FBI agent in charge Hoppe, Defendant, Mr. Steingold and Mr. Elkins) first met on July 7, 2004, Defendant asserted his innocence regarding the property issues with Mr. West.  Each witness stated that Defendant also claimed that he had a legitimate right to the property and that no forgery of Mr. West's name had occurred.  None of the witnesses recalled any statements at the July 7, 2004, meeting to the effect that if Defendant "satisfied Mr. West," there would be no indictment against him for bilking Mr. West out of the property.  Rather, the testimony clearly reveals that the discussions regarding satisfaction of Mr. West were pertinent to Defendant's then imminent sentencing hearing before another judge in the Eastern District for another, unrelated fraud case.

5

Defendant asserts that once it was discovered that he had "allegedly forged Mr. West's signature, the U.S. Attorney and David Steingold, under information and belief, made an agreement that if the Defendant were to deed the property back to Mr. West, then all would be forgiven." Mr. Janice and Mr. Steingold unequivocally denied that any agreement to forgo an indictment in exchange for making Mr. West whole was ever made, not before, during or after the July 7, 2004, meeting. There was some testimony that Mr. Steingold suggested to the Government on more than one occasion that perhaps charges should not be filed (or could be or should be dropped) against Defendant if Mr. West was made whole. Such suggestions do not, however, constitute an agreement; rather, Mr. Steingold's suggestions constitute the actions of a knowledgeable and zealous attorney seeking the best result for his client.

Nothing on the record (or the Court's experience) gives the Court any reason to question the honesty, credibility or truthfulness of any of the witnesses called at the hearing, especially Mr. Janice and Mr. Steingold. These two men are respected and reputable members of the bar of the Eastern District of Michigan and have participated in literally hundreds, if not thousands, of plea bargain cases. Both attorneys know how and when to make agreements that benefit their respective clients, and they know if they made an agreement. In this case, they said they did not enter into an agreement, and nothing in the record supports a finding that such an agreement was ever made by Mr. Janice with respect to Defendant.

Accordingly, having viewed the testimony of the witnesses, the parties' stipulation regarding Mr. Zolkower, the exhibits and the parties' briefs in a light most favorable to Defendant, the Court finds that, at most, Defendant's counsel, Mr. Steingold, proposed to the Government that if Defendant were to make Mr. West whole, maybe Mr. West would or should not have the desire to

6

pursue charges against Defendant. The Court cannot, however, find any evidence in the record that the Government ever agreed to not bring (or drop) the charges on any condition. As such, the Court concludes that Defendant's assertion that there was some agreement that would preclude charges against him is nothing more than a defendant grasping at straws to unwind the entry of a guilty plea because he now believes he made a bad choice. Under the law, that is not sufficient to allow Defendant to withdraw his plea. *See Alexander, supra*.

For the foregoing reasons, the Court concludes that there was never an agreement between the Government and Defendant (and/or Mr. Steingold) that Defendant would not be prosecuted if Defendant "made Mr. West whole" or if "Mr. West was satisfied." Such agreement is but a figment of Defendant's imagination.

**B.      Voluntariness of the Guilty Plea**

The Court finds that Defendant has wholly failed to show any fair and just reason for withdrawing his guilty plea. *Bazzi, supra*. To the contrary, the record in the instant matter demonstrates that it would be wholly unfair and unjust to allow Defendant to withdraw his guilty plea. First, as noted above, the Government did not to agree to forego or drop charges against Defendant for any reason. Second, this is the third time Defendant has entered a guilty plea in the United States District Court for the Eastern District of Michigan (having done so previously in Cr.# 92-80367 and Cr.# 03-80554). His prior experiences in criminal cases before courts in this District undermine his present claims that he made this plea with unsure heart and confused mind.

The record reflects that Defendant entered a guilty plea before this Court on February 2, 2006. A few minutes prior to the entry of the plea by Defendant, defense counsel requested (on the record) a change to paragraph 2B of the Plea Agreement (which provided for a sentence within the

projected Guideline range of 30 - 37 months). Upon the request of defense counsel, the Government agreed to delete the above-stated range from that section of the plea agreement. As a result, the parties agreed that Defendant would be sentenced within the applicable Guideline range, as determined by the Court. All of the parties initialed this change to the Plea Agreement. The Court also fully addressed this change to the Plea Agreement with the parties during the plea proceedings.

Defendant asserts that he believed the purpose and/or effect of the foregoing change would be that he would receive "little or no time" for the instant offense (or certainly less than a 30-37 month prison term). The record provides no basis for that belief. In the course of taking Defendant's plea, the Court questioned Defendant extensively to ensure that Defendant was entering into the plea knowingly and voluntarily. For example, the Court asked Defendant if he understood that the maximum penalty that could be imposed was 15 years in jail and a $250,000 fine. Defendant stated that he understood. The Government represented that the Plea Agreement provided that Defendant would be sentenced within the applicable guideline range as determined by the Court, and Defendant said that was his understanding. Defendant also acknowledged that he had not been promised that (1) he was going to be placed on probation or would receive any specific sentence in exchange for his plea, or (2) the Court would go easy on him or be lenient if he pled guilty. The Court found then and finds now that, at the February 2, 2006 hearing, Defendant exhibited a thorough understanding of the rights which he was waiving and the consequences of his guilty plea.

In addition, despite Defendant's renewed claims in his Motion that he is innocent of any wrongdoing with respect to Mr. West, Defendant signed at least one statement/affidavit wherein he stated that he perpetrated a fraud on Mr. West by having Mr. West's signature forged on the

warranty deed transferring the lakefront property to Defendant. *See* Defendant Exhibit K, dated September 13, 2005. Similarly, when asked by the Court to explain what happened to cause Defendant to enter the guilty plea, Defendant stated "I signed Mr. Murray West's name on a warranty deed which I then filed with the Oakland County Register of Deeds.... I signed his [Mr. West's] name." Finally, the Court also notes that Defendant did not raise either of his present claims at the time of entering his guilty plea.

For the foregoing reasons, the Court finds that Defendant's plea was voluntarily made.

## IV. CONCLUSION

As noted above, the Court previously granted Defendant's alternative request for a *Santobello* hearing. For the reasons set forth in Section III.A. above, however, the Court holds that Defendant's claim that there was an agreement between the Government and Defendant and/or his criminal counsel is not supported by the evidence on the record. The Court further holds that Defendant's claim that his guilty plea was made involuntarily is not supported by the evidence on the record.

Accordingly, and for the reasons set forth above, the Court HEREBY DENIES Defendant's Motion to Withdraw Plea.

IT IS SO ORDERED.


    s/Lawrence P. Zatkoff
    LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

Dated:  May 25, 2006

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 25, 2006.

                                                   s/Marie E. Verlinde
                                                   Case Manager
                                                   (810) 984-3290